UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| FOROS ADVISORS LLC, | : | No. 17 Civ. 7514 |
|  | : |  |
| Plaintiff, | : |  |
|  | : | FIRST AMENDED |
| v. | : | COMPLAINT |
|  | : |  |
| DIGITALGLOBE, INC., | : |  |
|  | : | **ECF CASE** |
| Defendant. | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Foros Advisors LLC ("Foros"), by its attorneys, Covington & Burling LLP, for its

Complaint against DigitalGlobe, Inc. ("DGI"), alleges as follows:

### NATURE OF THE ACTION

1.    This is an action to recover for DGI's breach of its agreement to retain

Foros as a financial advisor—and pay Foros a customary advisory fee—in the event DGI entered

into a merger on the basis of the substantial work Foros did providing strategic advice to DGI

and creating the tools for DGI to assess potential M&A transactions.

2.    In August 2015, DGI engaged Foros, a strategic financial advisory

boutique, to develop long-term business acquisition strategies for the company and devise the

financial tools that DGI could use to assess and evaluate alternative strategies.

3.    The terms of engagement were straightforward.  Foros would receive an

up-front fee at a substantial discount to market, but DGI would offer Foros the opportunity to act

as a financial advisor to DGI, and to receive a customary (and more substantial) fee in

connection with that opportunity, if DGI determined to consider any acquisition or other strategic transaction as a result of its engagement with Foros.

       4.     Over the succeeding months, Foros identified the key drivers underlying DGI's financials, built a dynamic financial modeling tool that enabled DGI to assess the effect of changes in those key drivers and thereby evaluate alternative strategies, helped management develop three primary business strategy scenarios, advised DGI on how to position itself in the marketplace, and presented a framework to the company for considering M&A strategies.

       5.     Throughout 2016 and into early 2017, DGI continued to confer with Foros periodically regarding strategic advice.

       6.     In February 2017, DGI agreed to merge with McDonald, Dettwiler and Associates Ltd.  DGI engaged two other financial advisory firms, Barclays Capital Inc. ("Barclays") and PJT Partners LP ("PJT"), in connection with the transaction, and agreed to pay them a total of $54 million.  But while DGI's determination to consider the merger resulted from Foros's creation of the tools by which to model and assess the effect of potential M&A deals—*in fact, DGI provided the dynamic, three-scenario financial model created by Foros to Barclays, which in turn delivered a fairness opinion on which the DGI board relied in entering into the merger*—DGI, in breach of the Engagement Letter, did not offer Foros the opportunity to serve as an advisor on the transaction.

       7.     By this action, Foros now seeks to recover for DGI's breach and receive the customary advisory fee to which it is entitled.  In the alternative, Foros seeks to recover in quantum meruit and unjust enrichment for the value of the services and other benefits that it provided to DGI.

## PARTIES

8.      Plaintiff Foros is a limited liability company, the ultimate members of which are New York residents.

9.      On information and belief, defendant DGI is a corporation organized under the laws of Delaware, with its principal place of business at 1300 West 120th Avenue, Westminster, Colorado 80234.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), in that this is an action between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11.     This Court has personal jurisdiction over Defendant DGI based on its contractual consent to jurisdiction.  DGI and Foros signed an engagement letter on August 1, 2015 (the "Engagement Letter").  Ex. A.  In the Engagement Letter, DGI consented to the exclusive jurisdiction of the United States District Court for the Southern District of New York or state courts located in New York City.  *Id.* ¶ 10.

12.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3) and the exclusive forum selection clause in paragraph 10 of the Engagement Letter.

## FACTS

### DGI's Engagement of Foros

13.     Defendant DGI is a commercial provider of satellite imagery.

14.     In the first half of 2015, DGI was struggling to grow its revenues, a subject over which investors expressed increasing concern.

3

15.     In addition, DGI suffered from an identity crisis in the marketplace.  It had aspects of a satellite business, a government contractor, and an information services business, but did not clearly have the profile of any of these three established business types.  This lack of a clear business profile and strategy made DGI a less attractive candidate for potential investors or acquirors.

16.     DGI engaged Foros to assist DGI with a strategic assessment.  DGI needed assistance conceptualizing potential long-term strategies for the company, identifying the key drivers for those strategies, understanding their financial implications, and establishing a clear market profile.

17.     Foros had previously explained to DGI management that Foros's business model for these types of services was based on providing strategic advice at a discounted price upfront, with the opportunity to earn a substantial fee on the back end as a financial advisor in connection with any merger and acquisition ("M&A") deals when and if they occurred.

18.     Foros and DGI memorialized this understanding in an Engagement Letter dated August 1, 2015, a copy of which is attached here as Ex. A.  The Engagement Letter provided that Foros would assist DGI "in the review of [DGI's] strategic plan and development of an acquisition strategy and framework for evaluating acquisition opportunities and such other matters as [Foros and DGI] may agree."  It further provided:

> If [DGI] determines to consider any acquisitions or other strategic transactions as a result of this engagement during the term of this Agreement or during the 18-month period following the termination of this Agreement, [DGI] will offer Foros the opportunity to act as a financial advisor to [DGI] in connection therewith . . . . If Foros agrees to act in any such capacity for a particular transaction, [DGI] and Foros . . . will enter into an appropriate form of agreement relating to the type of transaction involved and containing customary terms and conditions, including

fee provisions and provisions relating to indemnification of Foros,
as negotiated and agreed in good faith by [DGI] and Foros.

Ex. A ¶ 1.

### *Foros's Development of Operating Scenarios and Creation of the "Sandbox"*

19.    Over the next several months, Foros provided guidance to DGI on how to frame its business and categorize its revenue sources into coherent marketable and analyzable services.  Foros also developed a roadmap for DGI on messaging and strategy to establish a clear market identity that would better position DGI as a candidate for investors.

20.    DGI had built a long-range plan ("LRP"), which consisted of a large Excel spreadsheet containing static financial projections for the company.  The LRP did not allow DGI management to dynamically manipulate key inputs—or even to identify what the financial drivers were—in order to financially model and comparatively assess strategic alternatives.  The ability to model alternative scenarios was critical to developing and settling on a business strategy, and assessing whether organic growth, or alternatively some sort of merger or acquisition, was necessary to realize that strategy.

21.    Accordingly, Foros worked with DGI to develop three alternative business scenarios.  Critically, Foros examined DGI's financials, distilled the data to isolate the key business and financial drivers for DGI, and built a tool, referred to as the "Sandbox," that allowed dynamic financial modeling of a given business strategy based on variations to those inputs.  The Sandbox was *the* tool for assessing the financial impact of alternative DGI business strategies in order to make informed business judgments.

22.    DGI expressed interest in particular in potentially launching a so-called "platform" business.  Whereas DGI's existing business involved directly selling images from its satellite imagery library to customers, becoming a "platform" business meant that DGI would

create an online imagery platform that enabled outsiders to develop applications that could

analyze or make other use of the images in the library.

23.     DGI had not identified, however, how it would be able to define and value

this as a business strategy.  DGI therefore asked Foros to help define what DGI's business would

need to look like in order to be viewed as a platform company.  This included questions about

the type of margins, capital expenditure, and revenue split with application developers that DGI

could expect as a platform company.

24.     Foros developed financial metrics for the business that enabled DGI to put

numbers to the platform strategy and assess whether to pursue it.

25.     Foros's analysis made clear that DGI likely would not be able to become a

full-fledged platform company without an M&A deal to acquire some of the necessary

capabilities.  The Sandbox was intended to inform DGI's analysis of potential M&A or other

"inorganic" activity by showing DGI what various "organic" business plans could yield on a

long-term basis.

26.     Foros also prepared and provided to DGI an "M&A Framework," a

breakdown of key considerations for DGI to use in analyzing potential M&A transactions.

27.     The final versions of the three operating scenarios and their financial

projections were presented to the DGI board of directors in September 2015.  DGI management

advised the board that the platform-centric scenario provided the most value creation potential.

Management also specifically advised the board that pursuit of M&A opportunities would

enhance DGI's ability to develop a platform business.

*DGI's Initial Consideration of M&A Opportunities As a Result of Foros's Work*

28.    In September and October 2015, DGI discussed with financial sponsors a potential leveraged buyout of DGI.  In connection with this process, DGI's chief financial officer and others from DGI reached out to Foros for continued advice.

29.    On a call on October 8, 2015, Foros spoke with the DGI CFO and with Barclays, another advisor to Foros, to discuss the LBO outreach.  Consistent with the terms of the Engagement Letter, DGI's CFO assured Foros that it would be part of any advisory team if a transaction occurred.

30.    The discussions about the LBO ultimately were terminated, but DGI remained open to potential M&A opportunities based on the analysis performed by Foros.

*The MDA Merger*

31.    In October 2016, DGI began discussions with MacDonald, Dettwiler and Associates Ltd. ("MDA") regarding a potential merger.

32.    From October 2016 to February 2017, DGI discussed the potential deal with MDA and also contacted several other parties about a potential business combination (the "other potential transactions").

33.    DGI engaged PJT and Barclays to serve as financial advisors in connection with these potential transactions.

34.    At the same time, DGI continued to consult Foros.  This included an in-person meeting in January 2017.  In February 2017, DGI then requested that Foros further develop the strategic assessment Foros created in 2015.  Throughout this time, however, DGI did not disclose to Foros its discussions with MDA or any of the other potential merger partners with

whom DGI was having discussions, let alone offer Foros the opportunity to serve as a financial advisor in connection with these potential transactions.

35.    On February 24, 2017, DGI and MDA entered into a merger agreement (the "MDA Merger"), whereby MDA agreed to acquire DGI for approximately $3.6 billion. DGI agreed to pay PJT a fee of $36 million and Barclays a fee of $18 million upon consummation of the MDA Merger.

36.    DGI evaluated the MDA Merger and the other potential transactions in light of three alternative business scenarios.  DGI also provided an iteration of one of the operating scenarios to the parties with whom DGI planned to explore a potential strategic transaction, including MDA.  PJT and Barclays relied on these operating scenarios in preparing their fairness opinions for the MDA Merger.

37.    On information and belief, these scenarios were based on the scenarios developed with Foros, using the Sandbox Foros created.  In fact, *before Barclays rendered its fairness opinion, DGI provided Barclays with the Sandbox created by Foros.*

38.    In addition—further to Foros's advice that a merger or acquisition was essential to launching a platform business—DGI and MDA plan to launch such a platform business following the closing of the merger.  In an investor presentation dated August 8, 2017, DGI and MDA touted a "'Geospatial Big Data Exchange' Platform" that would enable third-party applications to make use of DGI imagery and other data.

39.    DGI's consideration of the MDA Merger and the other potential transactions was based on and resulted from Foros's work.  Foros's work directly informed DGI's determination to pursue M&A possibilities, helped define DGI's position in the marketplace to make it a more attractive candidate for investors or acquirors, and provided the

tools for DGI to evaluate any merger opportunity.  In particular, the business cases Foros helped

develop, the Sandbox created by Foros and shared by DGI with Barclays, Foros's analysis of a

platform strategy, and the M&A Framework that Foros provided to DGI were all substantial

factors in DGI's determination to consider the MDA Merger.

### FIRST CAUSE OF ACTION
(Breach of Contract)

40.      Paragraphs 1 through and including 39 are repeated and re-alleged as if
fully set forth herein.

41.      Foros has fulfilled all of its obligations under the Engagement Letter.

42.      DGI determined to consider the MDA Merger and the other potential
transactions as a result of its engagement with Foros.

43.      In breach of the Engagement Letter, DGI failed to offer Foros the
opportunity to act as a financial advisor to DGI in connection with the MDA Merger and the
other potential transactions and enter into an agreement containing a customary fee.

44.      Had DGI offered Foros the opportunity, Foros was ready, willing, and able
to serve as a financial advisor to DGI in connection with the MDA Merger and the other
potential transactions in exchange for a customary fee.

45.      Foros was damaged by DGI's breach, which deprived Foros of a
customary fee for serving as a financial advisor in connection with the MDA Merger and the
other potential transactions.

### SECOND CAUSE OF ACTION
(In the Alternative, Quantum Meruit)

46.      Plaintiff repeats and realleges Paragraphs 1 through 45 as if fully set forth
herein.

47.    Foros provided services to DGI in good faith.

48.    DGI accepted and enjoyed the benefit of those services.

49.    DGI was on notice that Foros expected to be paid for the reasonable value of its services and that Foros provided those services at an up-front discount to their reasonable value in reliance on DGI's promise to offer Foros the opportunity to serve as a financial advisor—and receive a customary fee—in connection with any strategic transaction that DGI determined to consider as a result of the services that Foros provided.

50.    The reasonable value of the services Foros provided to DGI was at least $1,500,000.  For those services, DGI paid Foros only $312,500.

51.    Foros is entitled to receive from DGI the reasonable value of the services Foros provided.

### THIRD CAUSE OF ACTION
(In the Alternative, Unjust Enrichment)

52.    Plaintiff repeats and realleges Paragraphs 1 through 51 as if fully set forth herein.

53.    At Foros's expense, DGI was enriched by the discounted services that Foros provided in reliance on DGI's assurances that it would offer Foros the opportunity serve as financial advisor at a customary fee in connection with any strategic transaction that DGI determined to consider as a result of the services that Foros provided.

54.    The circumstances are such that equity and good conscience would make it unjust for DGI to retain the benefit of Foros's services without paying Foros the reasonable value of the services that Foros provided and the other benefits that DGI received therefrom.

WHEREFORE, Plaintiff seeks judgment as follows:

(i)     awarding Plaintiff contract damages in an amount not less than

        $18,000,000;

(ii)    in the alternative, awarding Plaintiff damages on its quantum meruit and

        unjust enrichment causes of action in an amount to be determined at trial;

(iii)   awarding Plaintiff pre-judgment interest; and

(iv)    granting Plaintiff such other and further relief as the Court may deem just

        and proper.


Dated: New York, New York                    COVINGTON & BURLING LLP
       December 5, 2017
                                             By:  s/ Jonathan M. Sperling
                                                  Jonathan M. Sperling
                                                  Eric Hellerman


                                             The New York Times Building
                                             620 Eighth Avenue
                                             New York, New York 10018
                                             Telephone:  (212) 841-1000

                                             *Attorneys for Plaintiff*